IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| STATE OF MISSOURI, ex rel. Attorney General Eric S. Schmitt,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR–BUREAU OF RECLAMATION,<br><br>Defendants. | Case No. 2:20-cv-4018-NKL |

**ORDER**

Defendants Department of the Interior ("Interior"), Bureau of Reclamation ("Reclamation"); U.S. Army Corps of Engineers ("Corps"); David Bernhardt, Secretary of the Interior; Brenda Burman, Commissioner of Reclamation; Michael Black, Regional Director; Arden Freitag, Dakotas Area Manager; Ryan McCarthy, Secretary of the Army; and Brigadier General D. Peter Helmlinger, Northwestern Division Commander (collectively, the "Federal Defendants"), and North Dakota Garrison Diversion Conservancy District ("Garrison District") move pursuant to 28 U.S.C. § 1404(a) to transfer this proceeding to the United States District Court for the District of North Dakota. Docs. 6, 17. For the reasons discussed below, Defendants' motion to transfer is denied.

**I.      Background**

Defendant Garrison District, a North Dakota state agency, Doc. 1 ¶ 20, is constructing the Central North Dakota Water Supply Project (the "CND Project") purportedly to provide a reliable source of water for industrial uses in communities and water districts in multiple counties in central North Dakota. Doc. 6-1 (Excerpts of Environmental Assessment ("EA") at 1-1 – 1-2). Garrison

District applied for a forty-year water service contract to obtain water from Reclamation, water that Reclamation claims to be authorized to provide under various federal statutes. *Id.* at 1-5 – 1-6. Under the proposed contract, Reclamation would supply Garrison District with a total of approximately 14,489 acre-feet per year. *Id.* at 2-1; *see also* Doc. 1 (Complaint) ¶ 25. The water supplied under the contract would be part of Reclamation's annual appropriation of 1,212,348 acre-feet of water from the Missouri River recognized in a permit issued to Reclamation by the North Dakota State Water Commission under North Dakota law. Doc. 6-1 at 2-1.

The water for the Project will be diverted from the McClusky Canal, a 73.6-mile canal in central North Dakota owned and operated by Reclamation. *Id.* at 1-5. The McClusky Canal waters originate from Lake Audubon, which is connected to and comprised of Missouri River water. *Id.*; Doc. 1 (Complaint) ¶ 23. For the CND Project, Garrison District will construct a water pipeline connecting to the McClusky Canal in Sheridan County, North Dakota. *Id.* The new pipeline will travel six miles south to a planned pipeline for the Red River Valley Water Project, a separate water project funded and sponsored exclusively by the State of North Dakota. Doc. 6-1 at 1-1; 1-5; 1-9. All of the communities and water districts to be served by the CND Project are within North Dakota and are also within the Missouri River basin. *Id.* at 1-9.

The initial tenth-of-a-mile segment connecting to the McClusky Canal will traverse federal land managed by Reclamation. *Id.* at 1-10; 2-1. Garrison District also will need to construct and maintain facilities on Reclamation's land, and arrange for installation of a power line. *Id.* Garrison District therefore requested from Reclamation a special use permit allowing those activities on the federal land. *Id.* Finally, Garrison District requested the right to receive preference power from Reclamation to power pumps for the pipeline. *Id.* at 2-1 – 2-2.

2

Reclamation commenced the process required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–47, by issuing a "scoping notice" from its Dakotas Area Office in Bismarck, North Dakota. *Id.* at C-1 - C-3. After receiving comments on the scope of the project, and after issuing two drafts for public comment, Reclamation, through staff in the Dakotas Area Office, issued a final environmental assessment ("EA") evaluating the potential impacts of the proposed action and its final Finding of No Significant Impact ("FONSI"). Doc. 6-2.

Plaintiff alleges that Defendants have not evaluated the impacts upon Missouri's human environment of their usage of Missouri River water in their proposed construction of the CND Project, in violation of NEPA, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–59, 701–06, 1305, 3105, 3344, 4301, 5335, 5372, 7521. Doc. 1, p. 2. Plaintiff claims that the FONSI that Reclamation issued for the CND Project focuses exclusively on impacts in the vicinity of the project and fails to consider the adverse impacts on Missouri that the CND Project, in combination with the Red River Valley Water Supply Project and other foreseeable water diversion projects, would have. *Id.* (Although the Red River Valley Water Supply Project did not independently require Reclamation's approval, by itself, that project allegedly will divert an additional 145 cubic feet per second, or approximately 105,000 acre-feet per year, from the Missouri River—over seven times the quantity of water that would be diverted by the CND Project. *Id.* ¶ 35.) Plaintiff alleges that Defendants also failed to consider whether there are viable mitigation measures or alternatives to the CND Project that would prevent the adverse impacts on Missouri.

Approximately 40 percent of Missouri's population is served in some fashion by the Missouri River. *Id.* ¶ 41. Missouri depends on the Missouri River for municipal and industrial water supply, navigation and transportation requirements, and providing reliable power to its

citizens. *Id.* ¶ 37. Missouri also manages and maintains numerous state parks and conservation areas in the Missouri River floodplain, many of which contain wetlands and sensitive bottomland ecosystems that are sustained by their connections to the Missouri River. *Id.* Reduced flow during dry seasons and especially during drought conditions adversely affects Plaintiff's ability to access water for municipal uses, crop transportation, generation of electricity and diminishes Plaintiff's capability to maintain the fragile wetland ecosystems of state parks and conservation areas. *Id.* ¶ 38.

Plaintiff alleges that, on average, 5.05 million acre-feet ("MAF") per year of Missouri River water, approximately one-third of the annual average volume for the Missouri River at Bismarck, North Dakota, is consumed or evaporated by the time it reaches Garrison Dam from the Missouri River headwaters. *Id.* ¶ 27. Diverting additional water from the Missouri River prior to the Garrison Dam will, according to Plaintiff, reduce water released from the reservoir system for downstream beneficial use. *Id.* ¶ 28.

Plaintiff seeks declaratory and injunctive relief.

## II. Standard

The Court may "transfer any civil action to any other district or division where it might have been brought," so long as it is "[f]or the convenience of parties and witnesses" and "in the interest of justice . . . ." 28 U.S.C. § 1404(a). Thus, after the appropriateness of venue in the proposed forum is established, the Court must undertake "'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988) (citation omitted).

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a

transfer is warranted." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). A "'transfer should not be granted when to do so would merely shift, rather than eliminate, the inconvenience of the parties.'" *Halton v. Am. Int'l Grp., Inc.*, No. 06-0443, 2006 U.S. Dist. LEXIS 92598, at *6 (E.D. Wis. Dec. 18, 2006) (quoting *Ellis Corp. v. Team Textile Corp.*, 574 F. Supp. 170, 173 (N.D. Ill. 1983)).

The decision as to whether to transfer a case is discretionary. *Stewart Org.*, 487 U.S. at 29, 108 S. Ct. at 2244.

### III. Discussion

#### a. Venue

"A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority" may be brought in "any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(1)(B). Reclamation argues that its decision to approve the CND Project and the creation of the EA occurred in North Dakota, and venue in that District Court therefore would have been proper. Although Plaintiff argues that the CND Project "has implications that reach past the state lines" of North Dakota, it does not deny that this action could have been brought in the District of North Dakota. *See, generally,* Doc. 26. Thus, there is no dispute that the District of North Dakota would be a proper venue for this proceeding.

#### b. Convenience

The Court next considers the question of convenience. Among the factors that courts traditionally consider in evaluating convenience are:

> (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra Int'l*, 119 F.3d at 696.

### i. The Parties Witnesses, and Records

Plaintiff's home state is the more convenient forum for it, while North Dakota is the more convenient forum for Defendants. The factor of the parties' convenience thus does not weigh in favor of either forum.

As for witnesses and documents, Defendants argue that this case will be resolved on the basis of the administrative record, and therefore, the convenience of witnesses and accessibility to records and documents are not relevant considerations. Doc. 6, p. 7. Plaintiff agrees that if the cases can be decided on the administrative record, questions regarding witness convenience and location of records are irrelevant. Plaintiff further states that, even if the case cannot be decided on the basis of the administrative record, the convenience of witnesses and location of records does not weigh in favor of either venue, because "witnesses from both North Dakota and Missouri may be needed." Doc. 18, pp. 9-10.

The Court agrees with the parties that the convenience of witnesses and location of relevant records do not weigh in favor of either venue. If the case is decided on the basis of the administrative record alone, witnesses and outside records will be a nonfactor. *See White Earth Nation v. Kerry,* No. 14-4726 (MJD/LIB), 2015 WL 8483278, at *4 (D. Minn. Dec. 9, 2015) ("Plaintiffs' claims of violations of the NEPA and NHPA are brought pursuant to the APA which provides for a private right of action and a waiver of sovereign immunity for claims challenging agency action. . . . Such review is limited to the administrative record.") (citing 5 U.S.C. § 702;

6

Case 2:20-cv-04018-NKL   Document 27   Filed 06/08/20   Page 6 of 11

*United States v. Massey*, 380 F.3d 437, 440 (8th Cir. 2004)); *Pac. Coast Fed'n. of Fishermen's Ass'ns v. Ross,* No. 19-CV-07897-LB, 2020 WL 1322947, at *5 (N.D. Cal. Mar. 20, 2020) ("In environmental cases involving an administrative record, factors such as convenience are for the most part not implicated. This is because there are no witnesses to provide, and documentary evidence is as easily provided in one venue as another, especially in this age of electronic transmission."). If the case is decided on more than the administrative record, processes that unfolded in North Dakota may be relevant, but information concerning how the CND Project would affect Missouri may also be relevant. Thus, this factor does not weigh in favor of either forum.

### ii. Where the Conduct Complained of Occurred

Defendants argue that "this case centers on a project analyzed and approved in North Dakota," and that "North Dakota law provides a relevant backdrop to the project," and therefore the "locus" of the case is in North Dakota. In support of this argument, Defendants point to the alleged facts that the decision at issue "was made in North Dakota by Reclamation's Dakotas Area Manager," that "[t]he relevant NEPA documents—namely the EA and the FONSI—were prepared exclusively in North Dakota," the "CND Project itself . . . will occur in North Dakota," and two of the defendants (one of which moved to intervene after the motion to transfer was filed) are the State of North Dakota and a North Dakota state agency. Plaintiff concedes that the decision to approve the FONSI was committed by a branch of Reclamation located in North Dakota. Doc. 18, p. 8. However, Plaintiff maintains that "this case is about the impacts of the project on Missouri land and access to water." *Id*., p. 8.

"In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Ngonga v. Sessions*, 318 F. Supp. 3d 270,

275 (D.D.C. 2018) (quoting *Nat'l Ass'n of Home Builders v. United States EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009)). Indeed, "[w]here the decisionmaking process was concentrated in a particular city or state, courts have found this factor to weigh heavily in the transfer analysis." *Hight v. United States Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1185 (S.D. Fla. 2019) (quoting *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015)).

It is undisputed that, here, the decision-making process occurred in North Dakota. *See* Doc. 18, p. 8 (stating, "Plaintiff admits that the decision to approve the Finding of No Significant Impact pursuant [to] NEPA was committed by a federal branch of the Bureau of Reclamation located in North Dakota"). Thus, although the factual and legal questions underpinning this case concern Defendants' alleged failure to evaluate the CND Project's effects in Missouri as required by law, the locus factor weighs in favor of transfer. *See Nat'l Ass'n of Home Builders*, 675 F. Supp. 2d at 179. (finding that claims arose primarily where the federal officials made the decisions, rather than in Arizona, where the alleged injury may be suffered).

### iii. The Substantive Law

Defendants acknowledge that Plaintiff's claims are asserted under federal law, but they argue that North Dakota law "forms part of the backdrop to the parties' dispute." Doc. 6, p. 9. Because Garrison District was created by statute, Defendants argue, the District's construction and operation of the Project "is both driven by and subject to, the statutory purposes for which the Garrison [District] was created." *Id.* Furthermore, the water to be delivered under the water service contract was appropriated by Reclamation consistent with North Dakota law. In contrast, Defendants argue, Missouri law is not part of the backdrop to this dispute.

Plaintiff contends that this case is governed by federal law alone, and therefore, even if North Dakota law underlies actions that Garrison District or even the federal defendants took, this Court is just as capable of adjudicating the case as the federal court in North Dakota.

While North Dakota law may have formed the "backdrop" of the CND Project, it cannot reasonably be said to play a role in the judicial determination of whether Defendants failed to evaluate the environmental impacts of the CND Project on Missouri, in contravention of NEPA and the APA.  The substantive law applicable to this case is federal statutory law alone, and this Court is just as well-positioned to apply federal law as is the federal court in North Dakota.  *See Gray v. HireRight, LLC*, No. 18-6177, 2019 WL 1510000, at *4 (W.D. Mo. Apr. 5, 2019) (denying motion to transfer where, *inter alia*, "[t]he substantive law at issue in th[e] case [wa]s federal statutory law").

### c. Interests of Justice

To decide the motion to transfer, the Court must next consider the interests of justice.  In analyzing the interests of justice, courts consider:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Terra Int'l*, 119 F.3d at 696.

Defendants argue, and Plaintiff concedes, that the Western District of Missouri, with 547 filings per judgeship, and 336 civil filings per judgeship, is more congested than the District of North Dakota, which has 387 filings per judgeship and 145 civil filings per judgeship.  However, Defendants acknowledge that "congestion is not[,] by itself, a dispositive factor."  Doc. 6, p. 12 (quoting *In re Apple*, 602 F.3d 909, 915 (8th Cir. 2010)).  Plaintiffs also argue that this Court is not so congested that it could not handle this case.

Moreover, in another regard, judicial economy favors the current forum. The Court now has some familiarity with the alleged facts. Defendants have not suggested that similar actions—perhaps instituted by other states in the Missouri River basin—are pending in the District of North Dakota, and that efficiencies therefore may be gained by consolidating the cases in that court. *Cf. Silverberg v. H&R Block, Inc.*, No. 06-cv-0519, 2006 U.S. Dist. LEXIS 29797, at *8 n.6 (E.D. Mo. May 12, 2006) (transferring case to Western District of Missouri because, *inter alia*, the matter "mirror[ed] eight class action lawsuits that ha[d] already been filed in the Western District," and there were additional suits in other district courts that the defendant wished to consolidate in the Western District); *Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 47 (D.D.C. 2017) ("Here, two similar cases are currently pending in the District of Utah, and transfer . . . will serve the interests of judicial economy."); *Italian Colors Rest. v. Am. Express Co.*, No. 03-3719, 2003 U.S. Dist. LEXIS 20338, at **10-11 (N.D. Cal. Nov. 7, 2003) (noting that a similar action was already pending in the proposed transferee forum and finding that plaintiffs had engaged in forum-shopping).

Plaintiffs chose the current forum. Defendants have not suggested that litigating this case in this venue would be significantly more costly than litigating it in the District of North Dakota. Indeed, if, as Defendants argue, the case is to be decided on the basis of the administrative record alone, there will be no exchange of discovery, no need to transport witnesses or attorneys for depositions or hearings, and no special expenses (other than attorneys' travel costs) associated with venue in either of the two forums. The parties do not suggest that they would encounter any obstacles to enforcing a judgment or to a fair trial in either forum. Finally, as this case concerns claims under a federal statute, there are neither any conflict-of-law nor local-law issues to consider. While the federal court in North Dakota has an interest in deciding matters relating to the CND

Project, this Court has an interest in deciding matters purportedly affecting Missouri's access to Missouri River waters. *Cf. Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996) (transferring case where the plaintiff's chosen forum "ha[d] no meaningful ties to or interest in" the case).[1]

### d. Weighing the Factors

While the convenience factor weighs in favor of transfer because of where the claim is said to have arisen, the interest-of-justice analysis slightly favors the current forum.

The statute permitting transfers of civil actions does so only insofar as it is "in the interest of justice . . . ." 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). Because the Court cannot find that the interest-of-justice factors warrant transfer, the Court concludes that transfer is not appropriate.

### II. Conclusion

For the reasons discussed above, the Court DENIES Defendants' motion to transfer the case.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: June 8, 2020
Jefferson City, Missouri

---

[1] The fact that the downstream effects would not be particular to Missouri is of no consequence in this analysis. Although, the CND Project would affect those downstream of Lake Sakakawea, including not just Missouri, but also portions of North Dakota itself, this case concerns downstream effects in Missouri alone.